1  DENNIS P. RIORDAN, Esq. (SBN 69320)
   DONALD M. HORGAN, Esq. (SBN 121547)
2  RIORDAN & HORGAN
   523 Octavia Street
3  San Francisco, CA 94102
   Telephone: (415) 431-3472
4
   Attorneys for Petitioner
5  EDDIE COLE

6

7

8

9            IN THE UNITED STATES DISTRICT COURT

10       FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  EDDIE COLE,                          )   No.
                                         )
12        Petitioner,                    )   **VERIFIED PETITION FOR A**
                                         )   **WRIT OF HABEAS CORPUS**
13        v.                             )
                                         )
14  TOM FELKER, Warden of the High       )
    Desert State Prison,                 )
15                                       )
          Respondent.                    )
16  _____  )

17        Eddie Cole, petitioner, by and through his undersigned counsel, petitions for a writ of

18  habeas corpus and by this verified petition states as follows:

19                                       I

20        This case arises under the Fifth, Sixth, and Fourteenth Amendments to the United States

21  Constitution.  The court has jurisdiction to entertain this application for a writ of habeas corpus

22  pursuant to 28 U.S.C. § 2254.

23                                       II

24        Petitioner is presently in the custody of Respondent/Warden Tom Felker  at the High

25  Desert State Prison in Susanville, California, in violation of the Constitution and laws of the

26  United States.

27                                       //

28

Verified Petition for Writ of Habeas Corpus        -1-

III

On May 13, 2003, a complaint was filed in San Francisco Superior Court, alleging that on May 7, 2003, petitioner committed the first degree murder of Karl Young, in violation of Penal Code (hereinafter "PC") section 187, a serious felony within the meaning of PC section 1192.7(c)(1). (CT 2) The complaint alleged that in the commission of the murder, defendant personally used a firearm, within the meaning of PC sections 12022.5(a)(1) and 12022.53(b). (Id.) The complaint additionally contained two special allegations: that defendant personally and intentionally discharged a firearm, within the meaning of PC sections 12022.53(c) and 12022.53(e)(1); and that, in commission of the charged offense, defendant personally and intentionally discharged a firearm, thereby causing the death of Carl Young, within the meaning of PC section 12022.53(d). (CT 2-3) A second felony count alleged that on May 7, 2003 defendant violated PC section 12021(a)(1) by possessing a firearm, having previously been convicted, on December 4, 2002, of felonious violation of Health and Safety Code (hereinafter "HS") section 11359 (possession of marijuana for sale). (CT 3)

On July 15, 2003, following a preliminary hearing, defendant was bound over on both counts. (CT 9)

On July 28, 2003, an information was filed in San Francisco Superior Court, repeating all the allegations of the initial complaint. (CT 11-12)

On April 21, 2204, following a jury trial, the jury returned its verdict, finding, on Count One, that defendant was not guilty of first degree murder, but was guilty of the lesser included offense of second degree murder, in violation of PC section 187. (CT 227-230, 232) The jury also found true the allegations that defendant personally used a firearm, and personally and intentionally discharged the firearm, causing death to Karl Young, within the meaning of PC sections 12022.5(a)(1), and 12022.53(d), respectively. (Ibid.) The jury also found defendant guilty, on Count Two, of possessing a firearm, in violation of PC section 12021(a)(1), having previously been convicted of a felony. (CT 231-232)

Verified Petition for Writ of Habeas Corpus        -2-

1   On May 26, 2004, defendant was sentenced to 15 years to life on Count One, and

2   to an additional term of 25 years, to be served consecutively, on the PC section

3   12022.53(d) enhancement. (CT 238)  An additional term of 3 years, on the PC section

4   12022.5(a)(1) enhancement, was stayed. (Ibid.) Defendant was also sentenced to a term of

5   3 years on Count Two, to be served concurrently. (CT 239-240)

6                                                    IV.

7   Defendant filed a timely notice of appeal on June 23, 2004. (CT 262)  The

8   California Court of Appeal, First Appellate District, Division Five, affirmed the judgment and

9   sentence in an opinion issued on April 21, 2006. (Exh. A) Petitioner thereafter filed a timely

10  petition for review in the California Supreme Court.  That petition for review, which asserted the

11  federal constitutional claims asserted in this petition, was denied in a California Supreme Court

12  order issued on July 12, 2006. (Exh. B) The Court of Appeals certified its April 19, 2004,

13  opinion as final through a remittitur to the trial court filed on July 21, 2006. (Exh. C)

14  Accordingly, petitioner has exhausted all of his present claims in the state courts.

15                                                    V

16  This petition is timely.  The one year time limitations period for filing a federal habeas

17  corpus action commenced on October 10, 2006, i.e., at the conclusion of the ninety-day period

18  following the California Supreme Court's July 12, 2006 denial of Mr. Cole's petition for review,

19  during which period petitioner was entitled to seek a writ of certiorari in the United States

20  Supreme Court. 28 U.S.C. § 2244(d)(1)(A); *Clay v. United States*, 537 U.S. 522 (2003); *Spitsyn*

21  *v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).  The one year limitations period applicable to the

22  instant petition thus expires on October 10, 2007. This petition is being filed in advance of that

23  date.

24                                                   VI

25  Petitioner challenges his murder conviction and related enhancements on the grounds that

26  he was deprived of his federal constitutional rights to due process and a fair trial, to present a

27  defense, and to trial by jury, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the

28  United States Constitution.  Specifically, and as will be discussed further in his forthcoming

**Verified Petition for Writ of Habeas Corpus**          -3-

1  supporting memorandum, petitioner contends that the state courts unreasonably ruled that

2  petitioner was not entitled to present the jury with the theories that he shot Mr. Young in actual

3  self-defense or in "imperfect" self-defense, and that the trial court had no obligation to instruct

4  the jury on those theories.

VIII

6       Each of the claims raised herein has been adjudicated in state court proceedings, and the

7  adjudication of each claim resulted in a decision that was (1) contrary to, or involved an

8  unreasonable application of, clearly established federal law, as determined by the Supreme Court

9  of the United States and within the meaning of 28 U.S.C. § 2254(d)(1); and/or (2) based on an

10  unreasonable determination of the facts presented at the relevant state court proceeding and

11  within the meaning of 28 U.S.C. § 2254(d)(2).

IX

13       Furthermore, each of the state court errors either (1) had "a substantial and injurious

14  effect or influence in determining the jury's verdict," and warrants reversal on that basis. Brecht

15  v. Abrahamson, 507 U.S.619 (1993)(holding that a habeas petitioner is entitled to relief upon

16  demonstration that federal constitutional error had "a substantial and injurious effect or influence

17  in determining the jury's verdict" at his state trial); or (2) constituted a structural defect in the

18  constitution of the trial mechanism, rendering it reversible per se, California v. Roy, 519 U.S. 2,

19  5 (1997) (recognizing that structural errors mandate reversal without further consideration of

20  prejudice).

X

22       Petitioner incorporates by reference into this petition the forthcoming memorandum of

23  points and authorities and factual allegations contained therein, the exhibits to this petition, and

24  the entire state court record in People v. Cole, California Court of Appeal No. **A106946** and San

25  Francisco Sup. Ct. No. 190013.

26                                   / /

27                                   / /

28                                   / /

1

XI

2    Petitioner has no plain, speedy and adequate remedy to obtain his immediate release from

3  the conditions of probation presently imposed on him.

4    WHEREFORE, petitioner respectfully requests that this Court:

5    1. Issue its writ of <u>habeas</u> <u>corpus</u> or order to show cause to the Attorney General of

6  California to inquire into the lawfulness of petitioner's convictions;

7    2. Set aside petitioner's convictions;

8    3. Grant petitioner whatever further relief is appropriate in the interest of justice.

9  DATED: October 9, 2007

10                    Respectfully submitted,

11

12                    DENNIS P. RIORDAN
                      DONALD M. HORGAN
                      RIORDAN & HORGAN
13

14

15    By  _____
                      Dennis P. Riordan

16                    Attorneys for Petitioner
                      EDDIE COLE
17

18

19

20

21

22

23

24

25

26

27

28

1

## **VERIFICATION**

2      DENNIS P. RIORDAN declares under penalty of perjury:

3      I am counsel for petitioner Eddie Cole. My offices are in San Francisco County. In my

4  capacity as attorney for petitioner I am making this verification on his behalf because these

5  matters are more within my knowledge than his.

6      I have read the foregoing petition for a writ of habeas corpus, and declare that the

7  contents of the petition are true to the best of my knowledge.

8      Executed this 9th day of October, 2007, at San Francisco, California.

9

10
_____
Dennis P. Riordan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Verified Petition for Writ of Habeas Corpus**        -6-

# EXHIBIT A

Filed 4/21/06

COPY

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

# FILED
Court of Appeal-First App. Dist.

APR 2 1 2006

DIANA HERBERT

BY_____
            DEPUTY

| | |
|---|---|
| **THE PEOPLE,** | |
| **Plaintiff and Respondent,** | A106946 |
| v. | (San Francisco County |
| **EDDIE COLE,** | Super. Ct. No. 190013) |
| **Defendant and Appellant.** | |

Appellant Eddie Cole was convicted of second degree murder and other related crimes. He contends the trial court erred in refusing to instruct the jury on principles of self-defense and imperfect self-defense. We find no error and affirm.

I. FACTS AND PROCEDURAL HISTORY

David Pugh testified that, on May 7, 2003, he traveled from Oakland to San Francisco with his friend "T," planning to spend the evening selling drugs in the Tenderloin. As they walked the streets, Pugh heard that two of his associates from Oakland had recently been "jumped" by assailants on the street. One of the men who had been jumped was the eventual murder victim in this case, Karl Young; the other person was a man named "Tone."

When Pugh and T found Young and Tone, Pugh saw that Tone's face was swollen. The four men began looking for the men who had jumped Young and Tone. They picked up others along the way, so that they had a group of eight or ten men with them by the time they got to Sixth and Market. Young saw the man who had jumped him, Matthew Bell, standing on the corner with a smaller group of four or five people.

The men fought one another for a few minutes. When the fistfight came to an end, the two groups of men separated, while exchanging angry words. Bell protested to Pugh and Young that they should not have jumped him, and Young replied, "Y'all jumped me." At this point, Pugh noticed that another man, whom he subsequently identified as appellant, had walked up to join Bell and his friends.

Young started to walk away, saying, "You guys jumped me and we jumped y'all, so we can leave it at that or we can take it to gunplay, whatever." After Young and Pugh had turned their backs to walk away, Pugh heard someone yell a warning, "He has a gun." Pugh turned and saw appellant aiming a hand gun at Young. Young also turned to look, and then started to run away across the street. Appellant fired two or three times, hitting Young and killing him. Afterwards, Pugh searched Young and found Young not been armed.

Pugh was a convicted felon who was on probation at the time of this event. When police contacted him at the hospital in order to get his statement, Pugh gave a false name and later slipped away from the police after claiming he needed to use the bathroom. He was contacted again by the police when he came into custody at a later date.

Evidence from Young's autopsy showed he died from one gunshot to the small of the back on the right side, and the angle of the bullet suggested he might have been bending down to duck, or possibly reaching down, at the time he was shot. Young's body was big and muscular, and he had a tattoo on his forearm, showing a gun. Three expended shell casings were recovered from the intersection.

Matthew Bell, also a convicted felon, testified for the defense. He and Young had been involved in arguing or fighting all day. First, Young had an argument with Bell's friend, Don Beef. Young came back later with some friends and jumped Beef. Later, Young got into an argument with Bell, complaining that Bell had beaten up one of Young's friends. Young threatened to kill Bell, and Bell saw Young had a gun in his hand.

Finally, there was the fight at the corner of Sixth and Market. Young and his friends began beating up Bell. Appellant, whom Bell has known for many years, came to

Bell's aid. As he did so, Young punched appellant in the jaw, and appellant stumbled back. Young and appellant exchanged words. As Young walked away, he said, "Do you want to take this to gunplay." Bell saw Young reach down. Thinking Young might have a gun, Bell ran away. He then heard shots. Appellant and Bell fled in appellant's car.

At trial, appellant was found not guilty of first degree murder but was convicted of second degree murder and possession of a firearm by a felon. (Pen. Code, §§ 187, 12021 subd. (a)(1).) The jury also found true the allegation that appellant had personally used a firearm and had personally and intentionally discharged a firearm so as to cause death. The trial court sentenced appellant to 40 years to life in prison.

II. DISCUSSION

Appellant argues that the trial court erred by refusing to give his requested instructions on self-defense and imperfect self-defense, CALJIC Nos. 5.32 and 8.40.

Appellant claims these self-defense instructions were justified by evidence that he and the victim had just engaged in a fistfight and that the victim may have bent down so as to reach for something just before the shooting. Appellant notes that he was not required to testify at trial in order to be entitled to such instructions if other substantial evidence in the record required them to be given. (See *People v. De Leon* (1992) 10 Cal.App.4th 815, 824 (*De Leon*).)

We begin with the general rule: "A defendant is entitled to instruction on request on any defense for which substantial evidence exists. [Citations.] However, the trial court need give a requested instruction concerning a defense only if there is substantial evidence to support the defense." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 267; see also *People v. Moore* (2002) 96 Cal.App.4th 1105, 1116-1117.) "A trial court has no duty to instruct the jury on a defense—even at the defendant's request—unless the defense is supported by substantial evidence." (*People v. Curtis* (1994) 30 Cal.App.4th 1337, 1355.)

""'Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." [Citation.]' [Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1008; see also *People v.*

3

*Marshall* (1997) 15 Cal.4th 1, 39-40 (*Marshall*); *People v. Silvey* (1997) 58 Cal.App.4th 1320, 1335.) "The testimony of a single witness, including the defendant, can constitute substantial evidence requiring the court to instruct on its own initiative." (*People v. Lewis* (2001) 25 Cal.4th 610, 646.) """Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused." [Citations.]' [Citation.] Even so, the test is not whether *any* evidence is presented, no matter how weak. Instead, the jury must be instructed when there is evidence that 'deserve[s] consideration by the jury, i.e., "evidence from which a jury composed of reasonable [people] could have concluded"' that the specific facts supporting the instruction existed. [Citations.]" (*People v. Petznick* (2003) 114 Cal.App.4th 663, 677, italics in original.) "We review this issue as one of law." (*People v. Sinclair* (1998) 64 Cal.App.4th 1012, 1017.)

The evidence and testimony appellant points to did not furnish substantial evidence to support self-defense instructions. "For an assault to be in self-defense, the defendant must actually and reasonably believe in the need to defend." (*People v. Jefferson* (2004) 119 Cal.App.4th 508, 518.) Further, the defendant must actually and reasonably believe that the threat of physical harm is "imminent." (*People v. Hayes* (2004) 120 Cal.App.4th 796, 803 (*Hayes*); *De Leon, supra,* 10 Cal.App.4th at pp. 824-825; *People v. Uriarte* (1990) 223 Cal.App.3d 192, 197 (*Uriarte*); *People v. Aris* (1989) 215 Cal.App.3d 1178, 1186 (*Aris*).) "Imminence is a critical component" of a theory of self-defense. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1094.)

Even the unreasonable self-defense doctrine demands proof of a subjectively honest, if unreasonable, belief in the need to engage in lethal force to prevent imminent peril to life or serious injury. (*People v. Flannel* (1979) 25 Cal.3d 668, 674; *Aris, supra,* 215 Cal.App.3d at p. 1186.) "'It is the honest belief of *imminent peril* that negates malice . . . .' [Citations.]" (*Hayes, supra,* 120 Cal.App.4th at p. 803, italics added.) The unreasonable defense doctrine "recognizes that in order to warrant a conviction of manslaughter rather than murder, the defendant must honestly (if unreasonably) believe that *serious injury is imminent* and that lethal force is necessary." (*Uriarte, supra,* 223 Cal.App.3d at p. 197, italics added.) The unreasonable defense doctrine "is narrow. . . .

4

Fear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice. The defendant's fear must be of *imminent* danger to life or great bodily injury. '"[T]he peril must appear to the defendant as immediate and present and not prospective or even in the near future. *An imminent peril is one that, from appearances, must be instantly dealt with.*" . . . [¶] This definition of imminence reflects the great value our society places on human life.' [Citation.]" *(In re Christian S.* (1994) 7 Cal.4th 768, 783, italics added by the *Christian S.* court; see also *People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1269 *(Rodriguez); People v. Sekona* (1994) 27 Cal.App.4th 443, 449.)

      The circumstances of the shooting in the present case are inconsistent with any fear of imminent harm on the part of appellant. Although appellant and the victim had recently engaged in fisticuffs, that encounter had ended. The victim was walking away, with his back turned, and there was no evidence that appellant was faced with any immediate or imminent threat. The fact that the victim had made a comment that could be interpreted as a threat to engage in a shootout with appellant *at some unspecified later time* did not amount to a threat of *imminent* harm. Most critically, there is no evidence that before appellant began shooting, *appellant* saw or thought he saw any weapon in the victim's possession, or saw or thought he saw that the victim was reaching for any weapon. There was some evidence that the victim may have bent over or reached down around the time of the shooting. Bell testified he thought Young may have been reaching for a gun at this point. However, he also testified that he had seen Young with a gun earlier in the day. If believed, that earlier observation would certainly help to explain *Bell's* belief that Young was reaching for a gun. Yet, there was no evidence that appellant made that earlier observation or knew of it at the time of the shooting. At the time of the shooting, the victim was not running towards or attacking appellant, or anyone else. In fact, the victim was walking away from him. We therefore conclude that the requested self-defense instructions were not supported by substantial evidence. (See *De Leon, supra,* 10 Cal.App.4th at pp. 824-825.)

"[A] trial court 'is never required to give any instructions that would have had no foundation in the evidence or in any theory on which the case was tried.' [Citation.]" (*People v. Tapia* (1994) 25 Cal.App.4th 984, 1024-1025.) "'[U]nsupported theories should not be presented to the jury.' [Citation.]" (*Marshall, supra,* 15 Cal.4th at p. 40.) In the absence of substantial evidence that appellant acted in response to imminent danger, the trial court did not err by refusing to give the requested self-defense instructions. (*De Leon, supra,* 10 Cal.App.4th at p. 825; *Rodriguez, supra,* 53 Cal.App.4th at p. 1270; *People v. Strozier* (1993) 20 Cal.App.4th 55, 63.)

III. DISPOSITION

The judgment of conviction is affirmed.

_____
REARDON, J.*


We concur.


_____
JONES, P. J.


_____
GEMELLO, J.


(A106946)


_____
\*    Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# EXHIBIT B

Court of Appeal, First Appellate District, Div. 5 - No. A106946
**S143836**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

EDDIE COLE, Defendant and Appellant.

SUPREME COURT
F I L E D

JUL 1 2 2006

Frederick K. Ohlrich Clerk

DEPUTY

Petition for review DENIED.

GEORGE

Chief Justice

# EXHIBIT C

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 5

Dennis Patrick Riordan
Riordan & Horgan
523 Octavia Street
San Francisco, CA 94102

THE PEOPLE,
Plaintiff and Respondent,
v.
EDDIE COLE,
Defendant and Appellant.

A106946
San Francisco County No. 190013

### * * REMITTITUR * *

    I, Diana Herbert, Clerk of the Court of Appeal of the State of California, for the First Appellate District, do hereby certify that the decision entered in the above-entitled cause on April 21, 2006 has now become final.

___Appellant ___Respondent to recover costs
___ Each party to bear own costs
✓ Costs are not awarded in this proceeding
___ See decision for costs determination

    Witness my hand and the Seal of the Court affixed at my office this

JUL 21 2006

Diana Herbert
Clerk of the Court

**MARY P. QUILEZ**

Deputy Clerk



SEAL

msck

1    **PROOF OF SERVICE BY MAIL -- 1013(a), 2015.5 C.C.P.**

2    **Re:**    **Cole v. Felker**

3    I am a citizen of the United States; my business address is 523 Octavia Street, San

4    Francisco, California 94102. I am employed in the City and County of San Francisco, where this

5    mailing occurs; I am over the age of eighteen years and not a party to the within cause. I served
the within:

6    **VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS**

7
on the following person(s) on the date set forth below, by placing a true copy thereof enclosed in

8    a sealed envelope with postage thereon fully prepaid, in the United States Post Office mail box at

9    San Francisco, California, addressed as follows:

10                            **Lisa Ashley Ott**
                        **Deputy Attorney General**
11                  455 Golden Gate Avenue, Suite 11000
                        San Francisco, CA 94102

12
**[x] BY MAIL:**  By depositing said envelope, with postage thereon fully prepaid, in the United

13    States mail in San Francisco, California, addressed to said party(ies);

14    **[ ] BY PERSONAL SERVICE:** By causing said envelope to be personally served on said

15    party(ies), as follows:    **[ ] FEDEX**    **[ ] HAND DELIVERY**

    I certify or declare under penalty of perjury that the foregoing is true and correct.

16    Executed on October 9, 2007 at San Francisco, California.

17

18                                          _____
                                            Joellene Yue
19

20

21

22

23

24

25

26

27

28